UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JENNIFER L. KELLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:15-cv-01470-TWP-MJD |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner | ) | |
| of the Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON JUDICIAL REVIEW**

Plaintiff, Jennifer Keller ("Keller") requests judicial review of the final decision of the

Defendant, Carolyn W. Colvin, Commissioner of Social Security ("Commissioner"), wherein the

Commissioner denied her application for Social Security Disability Insurance Benefits ("DIB")

and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social

Security Act.[1]   For the reasons stated below, the Court **REVERSES** and **REMANDS** the

Commissioner's final decision.

**I.   BACKGROUND**

**A.   Procedural History**

On February 11, 2010, Keller filed applications for DIB and SSI benefits under

Subchapters II and XVI of the Social Security Act.  *See* 42 U.S.C. §§ 416(i), 423(d), 1382 (2012).

Keller alleged disability primarily due to migraine headaches, with an alleged onset date of May

---

[1] The regulations governing the determination of disability for Disability Insurance Benefits are found at 20 C.F.R. 401.1501 *et seq.*, while the Supplemental Security Income regulations are set forth at 20 C.F.R. 416.901 *et seq.*  In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI.  However, separate, parallel statutes and regulations exist for DIB and SSI claims.  *Compare, e.g.,* 20 C.F.R. § 404.1520, with 20 C.F.R. § 416.920.  Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates.  The same applies to citations of statutes or regulations found in quoted decisions.

15, 2009.  Administrative Law Judge Gregory M. Hamel ("the ALJ") held a hearing on August 3,

2011, and issued a decision concluding that Keller was not disabled under the Social Security Act.

Thereafter, the Appeals Council denied Keller's request for review, rendering the ALJ's decision

the final decision of the Commissioner.  Keller appealed the Commissioner's final decision, and

this Court adopted the Report and Recommendations of Magistrate Judge Mark Dinsmore which

reversed and remanded the case.  *See Keller v. Colvin*, No. 13-cv-00104-TWP-MJD, 2014 WL

948889 (S.D. Ind. Mar. 10, 2014).

In its prior Entry, the Court concluded that the ALJ failed to adequately assess equivalency

with Listing 11.03 Epilepsy, non-convulsive.  Specifically, the Court noted that the ALJ's decision

did not provide any indication of whether Keller's symptoms were considered under the Program

Operations Manual System ("POMS") despite the facts being "substantially similar to the example

the POMS provides".  *Id*. at *5-7.  The Court further noted that POMS § DI 24505.015 recognized

migraines as potentially medically equivalent to Listing 11.03 and highlighted the following

example:

> A claimant has chronic migraine headaches for which she sees her treating doctor
> on a regular basis.  Her symptoms include aura, alteration of awareness, and intense
> headache with throbbing and severe pain.  She has nausea and photophobia and
> must lie down in a dark and quiet room for relief.  Her headaches last anywhere
> from 4 to 72 hours and occur at least 2 times or more weekly.  Due to all of her
> symptoms, she has difficulty performing her [activities of daily living]. The
> claimant takes medication as her doctor prescribes.  The findings of the claimant's
> impairment are very similar to those of 11.03, Epilepsy, non-convulsive.
> Therefore, 11.03 is the most closely analogous listed impairment.  Her findings are
> at least of equal medical significance as those of the most closely analogous listed
> impairment.  Therefore, the claimant's impairment medically equals listing 11.03.

*Id*. at *5 (citing POMS § DI 24505.015, available at https://secure.ssa.gov/poms.nsf/lnx/

0424505015 (last visited June 16, 2016).  The Court also noted that "[w]ith the exception of

'alteration of awareness,' the record indicates that Keller has experienced all of these symptoms at one time or another." *Id.*

Finally, the Court noted that the POMS provision "supersede[d] the medical opinion of record", suggesting that the ALJ needed to obtain a new medical opinion regarding equivalency, particularly with regards to interpreting and applying the POMS provision. *Id.* at *6. The case was remanded to allow the ALJ an opportunity to also make a new residual functional capacity ("RFC") assessment that "thoroughly explain[s] the weight afforded to the treating physicians, Keller's credibility, and credibility of the lay opinions". *Id.* at *7.

On September 9, 2014, the same ALJ held a hearing wherein Keller was represented by counsel. On December 8, 2014, the ALJ issued a second decision, concluding again, that Keller was not disabled under the Social Security Act. (Filing No. 13-9 at 11-23.) In his decision, the ALJ stated that Keller's migraine headaches did not medically equal a listed impairment. *Id.* at 15-17. Notably, the ALJ briefly mentioned § DI 24505.015 but did not substantively discuss the equivalency example discussed in this Court's prior opinion. *Id.* Although he discussed the evidence of Keller's treatment of migraine headaches at length, the ALJ did not introduce an updated opinion of medical equivalence. *Id.* Further, when reevaluating Keller's RFC, the ALJ substantively re-evaluated the weight afforded to the treating physicians and Keller's credibility, but did not discuss the credibility of lay witness, Cameron Clawson, who has lived with Keller and who testified at the first hearing before the ALJ. (*Id.* at 18-21; Filing No. 13-11 at 51.)

Keller appealed the ALJ's second decision to the Appeals Council, requesting review of each of these issues and others. (*See* Filing No. 13-11 at 48-52.) On April 17, 2015, the Appeals Council denied Keller's request for review, specifically rejecting Keller's renewed appeal and, thereby, rendering the ALJ's second decision the final decision of the Commissioner. (Filing No.

13-9 at 2-7.)  Notably, the Appeals Council acknowledged the ALJ's mistake in not considering the relevant lay testimony but, nonetheless, affirmed the ALJ's second decision anyway.  (*See Id*. at 3) ("Though the [ALJ] should have addressed [Cameron Clawson's lay] testimony in his hearing decision (Social Security Ruling 06-03p), this deficiency does not provide a basis for the Appeals Council to assume jurisdiction of the case.").

On September 17, 2015, Keller filed her second complaint requesting judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g)(2012).

**B.**     **Medical History**

The facts of this case are set forth in detail in this Court's prior Order, and are restated verbatim.

Keller was 38 years old on the alleged onset date of disability.  She has past relevant work experience as an office manager and payroll clerk and stopped working due to migraine headaches.

Keller was referred to neurologist Caryn Vogel, M.D. in October 2007 by her primary care physician Lisa Bledsoe, M.D. for treatment regarding her migraine headaches.  At this initial examination, Dr. Vogel conducted a neurological examination during which Dr. Vogel found that Keller was able to carry on a complicated conversation with intact concentration, attention, speech and recall and that Keller had a relatively normal exam.  Dr. Vogel also determined that there was no secondary cause for the headaches based on normal brain imaging and normal examination.

Keller continued to report to Drs. Vogel and Bledsoe regularly for complaints of severe migraines.  Keller was started on many different medication regimens through 2010, none of which offered Keller much relief.

In February 2008, Keller reported getting a severe migraine about once every two weeks. Keller indicated that her headaches become worse with changes in the weather and can be

associated with nausea and light and sound sensitivity.  Keller was hospitalized in March 2008 for severe intractable headaches.  She reported that she has some sort of headache every day which can be associated with light and sound sensitivity and nausea.  Dr. Vogel expressed concern that her medication may be playing a role, if not exacerbating her migraines.  In April 2008, Dr. Vogel concluded that there was definitely a component of medication overuse headache.[2]

In January 2009, Keller reported having some sort of headache constantly which can be so severe that she is unable to function due to the pain and light sensitivity.  On examination, Dr. Vogel reported that Keller was able to carry on a complicated conversation.  In March 2009, Keller reported that she was doing better with prescribed medication and Botox injections.  Keller also described having visual auras of flashing moving lights.

After an examination in June 2009, Dr. Vogel found in her recommendations that she did not believe Keller was capable of working.  Dr. Vogel also reiterated this in a letter to Keller's insurance company for which Keller had applied for disability benefits.  In July 2009, Dr. Vogel wrote another letter to Keller's insurance company opining that Keller could not sit for long periods of time, could not concentrate, and was unable to look at a computer screen.  Dr. Vogel again reiterated that she did not believe that Keller would ever be able to return to work.

Keller was seen by Dr. Vogel in September 2009 for follow up on intractable migraine headaches, multiple medication failures, and possible medication overuse syndrome.  On examination in September 2009, Dr. Vogel reported that Keller was able to carry on a complicated conversation with intact concentration and speech.  Keller continued to report that she had some

---

2 "Medication overuse headache", previously referred to as rebound headaches, are caused by overuse of drugs to treat headaches and result in "progressively shorter periods of pain relief" and "a pattern of recurrent chronic headache".  *See Headache: Hope Through Research*, National Institute of Neurological Disorders and Stroke, available at http://www.ninds.nih.gov/disorders/headache/detail_headache.htm#3138_7 (last visited June 16, 2016).  Patients who take pain medication more than three times a week can develop this type of headache. *Id*.

sort of headache every day.  Vicodin controlled the headaches, but Keller indicated that it made her excessively tired. Dr. Vogel's impression was that Keller had intractable headaches with multiple medication failures.

In April 2010, state agency physician M. Ruiz, M.D. completed a Physical Residual Functional Capacity Assessment.  Dr. Ruiz did not examine Keller.  Dr. Ruiz opined that Keller did not have any exertional, postural, manipulative, visual, or communicative limitations. However, Dr. Ruiz opined that Keller had environmental limitations and recommended that Keller avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, noise, vibration, fumes, odors, dusts, gases, poor ventilation, and hazards including machinery and heights as these may exacerbate Keller's headaches.  Dr. Ruiz further opined that Keller's impairment did not meet or medically equal a listing.  In making this finding, Dr. Ruiz noted that Keller had normal exams and there was a concern for medication overuse.

Dr. Ruiz wrote a follow up case analysis in May 2010 as additional medical evidence was received and there was a question as to whether Keller's migraine headaches were severe enough to meet the intention of Listing 11.03 of the Listing of Impairments.  Dr. Ruiz indicated that his prior assessment was unchanged finding that the medical record did not support the alleged severity of symptoms and that Keller made no mention of migraines to her primary care physician Dr. Bledsoe at recent appointments despite the fact that Keller alleged severe migraines five days a week.  Dr. Ruiz' opinion was affirmed by state agency physician J. Sands, M.D. in July 2010.

Keller followed up with Dr. Vogel in June 2010 for intractable daily headaches, migraines, and multiple medication failures.  Dr. Vogel again reported on examination that Keller was able to carry on a complicated conversation with intact concentration and speech.  Dr. Vogel's impression was that Keller had intractable daily headaches with multiple medication failures and

a history of medication overuse.  Dr. Vogel again indicated that the medication overuse might be playing a role in Keller's headaches.

In August 2011, Dr. Vogel completed a Headaches Medical Source Statement.  In the statement, Dr. Vogel indicated that Keller had severe migraine headaches associated with nausea, vomiting, phonophobia, photophobia, throbbing pain, mental confusion, inability to concentrate, mood changes, malaise, pain worse with activity, and causes avoidance of activity. Dr. Vogel indicated that Keller's headaches were triggered by bright lights, hunger, lack of sleep, menstruation, stress, and weather changes.  When asked what makes Keller's headache's [sic] worse, Dr. Vogel indicated that moving around and noise make them worse.  It was Dr. Vogel's opinion that Keller was incapable of even low stress work, and Keller would likely have to miss more than four days of work per month due to her headaches.

## C.     ALJ's Decision

In his second opinion, the ALJ found that Keller had not engaged in substantial gainful activity since her May 15, 2009 alleged onset date. (Filing No. 13-9 at 14.) The ALJ concluded that Keller had severe impairments but that her impairments did not, singly or in combination, meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App'x 1. *Id*. at 14-17. Thereafter, the ALJ found that Keller had the RFC "to perform light work . . . , except she must avoid concentrated exposure to extreme cold, heat, wetness, humidity, nose [sic], vibration, fumes and hazards". *Id*. at 18. The Court notes that this RFC is identical to the RFC that the same ALJ made in his first decision.  (*Compare* Filing No. 13-2 at 17.)  Based on this RFC determination and the Vocational Expert's testimony, the ALJ concluded that Keller could perform her past work and could perform a significant number of other jobs in the national economy. (Filing No. 13-9 at 21-23.) As a result, the ALJ determined that Keller was not disabled. *Id*.

## II.  LEGAL STANDARD

### A.    Disability Determination

Under the Social Security Act, a claimant is entitled to DIB or SSI if he establishes he has a disability.  42 U.S.C. §§ 423(a)(1)(E), 1382 (2012).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 416(i)(1), 423(d)(1)(A), 1382c(a)(3)(A) (2012).  To justify a finding of disability, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B) (2012).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  If disability status can be determined at any step in the sequence, an application will not be reviewed further.  *Id*.  At step one, if the claimant is engaged in substantial gainful activity, he is not disabled despite his medical condition and other factors.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  At step two, if the claimant does not have a "severe" impairment that meets the durational requirement, he is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three of the sequential analysis, the ALJ must determine whether the claimant's impairment or combination of impairments meets or equals the criteria for any of the conditions included in 20 C.F.R. Part 404, Subpart P, App'x 1 (the "Listings").  20 C.F.R. §§

8

404.1520(a)(4)(iii), 416.920(a)(4)(iii).  *See also* 20 C.F.R. Pt. 404, Subpart P, App'x 1.  The listings are medical conditions defined by criteria that the Social Security Administration has pre-determined to be disabling.  *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004); 20 C.F.R. §§ 404.1525(a), 416.925(a).  *See also* 20 C.F.R. Pt. 404, Subpart P, App'x 1.  For each listing, there are objective medical findings and other findings that must be met or medically equaled to satisfy the criteria of that listing.  20 C.F.R. §§ 404.1525(c)(2)-(5), 416.925(c)(2)-(5).

If the claimant's impairments do not meet or medically equal a listing, then the ALJ assesses the claimant's residual functional capacity for use at steps four and five. 20 C.F.R. §§ 404.1520(e), 416.920(a)(4)(iv).  Residual functional capacity is the "maximum that a claimant can still do despite his mental and physical limitations."  *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008); 20 C.F.R. § 404.1545(a)(1); 20 C.F.R. § 416.945(a)(1).

At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At step five, the ALJ determines whether the claimant can perform any other work in the relevant economy, given his RFC and considering his age, education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  *See also* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B) (2012).  The claimant is not disabled if he can perform any other work in the relevant economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B) (2012).  The combined effect of all of a claimant's impairments shall be considered throughout the disability determination process. 42 U.S.C. §§ 423(d)(2)(B); 1382c(a)(3)(G) (2012).  The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner at the fifth step.  *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

**B.    Review of the Commissioner's Final Decision**

When the Appeals Council denies review, the ALJ's ruling becomes the final decision of the Commissioner. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009).  Thereafter, the district court will affirm the Commissioner's findings of fact if they are supported by substantial evidence. 42 U.S.C. § 405(g)(2012); *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008); *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).  Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dixon*, 270 F.3d at 1176; *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).  *See also Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (substantial evidence must be "more than a scintilla but may be less than a preponderance.").

In this substantial-evidence determination, the district court does not decide the facts anew, re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute the court's own judgment for that of the Commissioner. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008); *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).  Accordingly, if the Commissioner's decision is adequately supported and reasonable minds could differ about the disability status of the claimant, the court must affirm the decision. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

Ultimately, the sufficiency of the ALJ's articulation aids the court in its review of whether the Commissioner's final decision was supported by substantial evidence. *See Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985) ("[t]he ALJ's opinion is important not in its own right but because it tells us whether the ALJ has considered all the evidence, as the statute requires him to do").  While, the ALJ need not evaluate every piece of testimony and evidence submitted in writing, the ALJ's decision must, nevertheless, be based upon consideration of all the relevant

10

evidence. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009); *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). In this vein, the ALJ may not discuss only that evidence that favors his ultimate conclusion but must confront evidence that contradicts his conclusion and explain why the evidence was rejected. *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995).

Further, the ALJ's decision must adequately demonstrate the path of reasoning, and the evidence must lead logically to the ALJ's conclusion. *Terry*, 580 F.3d at 475; *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996). Indeed, to affirm the Commissioner's final decision, "the ALJ must build an accurate and logical bridge from the evidence to [his] conclusion." *Zurawski v. Halter*, 245 F.3d 881, 888-89 (7th Cir. 2001); *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

## III. DISCUSSION

The Court's discussion in this case need only be brief, as it is apparent that the ALJ repeated the same mistakes that justified this Court's remand order two years ago.

Despite this Court's instruction that the ALJ consider medical equivalency with Listing 11.03 based on POMS § DI 24505.015 and the example included therein, the ALJ failed to do so. Instead, the ALJ only cursorily mentioned the POMS and then evaluated the evidence in relation to the Listing itself. Specifically, the ALJ opined as follows:

> While the claimant does have a history of migraine headaches, overall there is no evidence to suggest that the claimant's migraine headaches cause symptoms that are of equal medical significance and analogous severity to the criteria of listing section 11.03 which involves petit mal, psychomotor, or focal seizures occurring more frequently than once weekly in spite of at least three months of prescribed treatment.

(Filing No. 13-9 at 16.) In his analysis, the ALJ did not discuss the POMS example that this Court specifically identified in its prior Order. *See Keller*, 2014 WL 948889 at *5.

The ALJ also failed to obtain a new medical opinion regarding equivalency, despite this Court's clear order to do so. *See Id*. at *6 ("In the RFC assessment, the ALJ alludes to relying on

the state agency physicians. . . . While it is error for the ALJ to make a finding on medical equivalency without a medical opinion, . . . here, there appears to be an amendment to the Social Security procedures that supersedes the medical opinion of record").

The Seventh Circuit has made it clear that an ALJ must consider an expert's opinion when determining whether a claimant's impairment equals a Listing. *Barnett*, 381 F.3d at 670-71 (holding that, because it involves a medical determination, an ALJ is required to consider an expert's opinion when determining whether a claimant=s impairment equals a Listing). *See also* 20 C.F.R. § 404.1526(c) (when considering equivalency with a Listing, the Commissioner "also consider[s] the opinion given by one or more medical or psychological consultants designated by the Commissioner"); S.S.R. 96-6p ("longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence . . . must be received into the record as expert opinion evidence and given appropriate weight"). Notably, the ALJ cites no medical opinions of equivalency, instead, citing to no medical opinions at all.

The Court's previous order for the ALJ to re-evaluate Keller's RFC and to "thoroughly explain the weight accorded to the treating physicians, Keller's credibility, and credibility of the lay opinions" was not followed. *See Keller*, 2014 WL 948889, at *6. In particular, the ALJ's second RFC determination is identical to his first RFC determination. (*Compare* Filing No. 13-9 at 18; Filing No. 13-2 at 17.) The Appeals Council acknowledged that the ALJ failed to consider the lay testimony of Cameron Clawson, Keller's longtime companion, but argued that this deficiency does not provide a basis for the trial court to remand the case. (*See* Filing No. 13-9 at 3.) The Court is not persuaded. The Court previously ordered that on remand, the fact finder was to explain the weight given to the credibility of the lay opinions under Social Security Administration regulations. ALJs must consider statements from lay witnesses when assessing

12

the claimant's credibility. See 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). This "deficiency"

provides an additional basis for this Court to remand the proceedings.

Each of the issues discussed above require remand to address clear legal errors.

## IV. <u>CONCLUSION</u>

For the reasons stated above, the final decision of the Commissioner is **REMANDED** for

further proceedings as authorized by Sentence Four of 42 U.S.C. § 405(g). In so doing, the Court

urges the Commissioner to assign a new ALJ to handle any additional proceedings. *See Briscoe*

*v. Barnhart*, 425 F.3d 345, 357 (7th Cir. 2005); *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th

Cir. 2003). The Court will enter final judgment by separate order.

**SO ORDERED.**

Date: 6/20/2016

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Theodore F. Smith, Jr
THEODORE F. SMITH JR. PC
tsmith@tedsmithlaw.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov